UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN ULRICH,<br><br>      Plaintiff,<br><br>    v.<br><br>SOFT DRINK, BREWERY WORKERS AND DELIVERY EMPLOYEES, INDUSTRIAL EMPLOYEES, WAREHOUSEMEN, HELPERS AND MISCELLANEOUS WORKERS, GREATER NEW YORK AND VICINITY, LOCAL UNION NO. 812, *et al.*,<br><br>      Defendants. | No. 17-CV-4730 (KMK) |
| LAWRENCE DEBELLIS,<br><br>      Plaintiff,<br><br>    v.<br><br>SOFT DRINK, BREWERY WORKERS AND DELIVERY EMPLOYEES, INDUSTRIAL EMPLOYEES, WAREHOUSEMEN, HELPERS AND MISCELLANEOUS WORKERS, GREATER NEW YORK AND VICINITY, LOCAL UNION NO. 812, *et al.*,<br><br>      Defendants. | No. 17-CV-5547 (KMK)<br><br>OPINION & ORDER |

Appearances:

Joseph J. Ranni, Esq.
Ranni Law Firm
Florida, NY
*Counsel for Plaintiffs John Ulrich and Lawrence DeBellis*

Anthony Patrick Consiglio, Esq.
Larry Cary, Esq.
Cary Kane LLP
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

John Ulrich ("Ulrich") and Lawrence DeBellis ("DeBellis") (collectively, "Plaintiffs"), bring these Actions (respectively, Case Nos. 17-CV-4730 and 17-CV-5547), against Soft Drink & Brewery Workers and Delivery Employees, Industrial Employees, Warehousemen, Helpers and Miscellaneous Workers Greater New York and Vicinity Local Union No. 812 ("Local 812" or "Union"), Edward Weber ("Weber"), individually and in his official capacity as President of Local 812, Joseph Vitta ("Vitta"), individually and in his official capacity as Secretary Treasurer of Local 812, John Visconti ("Visconti"), individually and in his official capacity as Vice President of Local 812, Mario Alvarez ("Alvarez"), and Artie Bowman ("Bowman"), each individually and in his official capacity as Trustee of Local 812, and James Surdi ("Surdi"), individually and in his official capacity as Recording Secretary of Local 812 (collectively, "Defendants").[1] (*See* Ulrich Am. Compl. (Case No. 17-CV-4730, Dkt. No. 30); DeBellis Am. Compl. (Case No. 17-CV-5547, Dkt. No. 18).)[2]

---

[1] In its previous Opinion & Order (the "Opinion"), the Court referred to Defendants as "Local 812 Defendants" to distinguish them from two other categories of Defendants that remained in the case at the time. (*See* Op. & Order ("Op.") 4 n.1 (Case No. 17-CV-4730, Dkt. No. 64; Case No. 17-CV-5547, Dkt. No. 56).) The Court further notes that the Opinion was amended in both cases by a short Order clarifying Visconti's status in the case following the issuance of the Opinion. (*See* Order (Case No. 17-CV-4730, Dkt. No. 67; Case No. 17-CV-5547, Dkt. No. 59).)

[2] Bowman is named as a Defendant only by DeBellis, not by Ulrich. (*See generally* DeBellis Am. Compl.; Ulrich Am. Compl.)

Plaintiffs allege retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL"), and state law defamation, in connection with Plaintiffs' termination from their Union jobs. (*See generally* Ulrich Am. Compl.; DeBellis Am. Compl.) Before the Court are Defendants' Motions to Dismiss (the "Motions"). (*See* Case No. 17-CV-4730, Ulrich Not. of Mot.; Decl. of Anthony P. Consiglio, Esq. in Supp. of Ulrich's Mot. ("Ulrich Consiglio Decl."); Defs.' Mem. in Supp. of Ulrich's Mot. ("Ulrich Defs.' Mem.") (Dkt. Nos. 78–80); Case No. 17-CV-5547, DeBellis Not. of Mot.; Decl. of Anthony P. Consiglio, Esq. in Supp. of DeBellis's Mot. ("DeBellis Consiglio Decl."); Defs.' Mem. in Supp. of DeBellis's Mot. ("DeBellis Defs.' Mem.") (Dkt. Nos. 71–73).)[3] For the following reasons, Defendants' Motion as to Ulrich is denied in part, and Defendants' Motion as to DeBellis is granted.

I. Background

The factual and procedural background of these cases were discussed in detail in the previous Opinion. (*See* Op. 3–34.) The Court will address the alleged facts as needed throughout and supplements the procedural background below.

On March 15, 2019, the Court denied Plaintiffs' Motions to Amend in both cases. (*See* Op. 80–81.) The operative complaints for these Motions are thus the Amended Complaints in

---

[3]As discussed in the previous Opinion, Ulrich and DeBellis's cases are related as they involve substantially the same parties, facts, and legal issues. (See Case No. 17-CV-5547, Dkt. No. 13; Dkt. (entry for Sept. 7, 2017).) With the exception of some factual differences with respect to Plaintiffs' job titles and their allegations against Defendants, the facts giving rise to the claims in these Actions, and the claims themselves, are identical. The Court therefore addresses the Motions together.

The Court notes that these cases are also related to Case No. 17-CV-137, in which Local 812 is suing Ulrich. (*See* Case No. 17-CV-0137, Dkt. No. 1.) Ulrich's case is also related to Case No. 17-CV-7023, in which the Local 812 Health Fund (the "Health Fund") is suing Ulrich. (*See* Case No. 17-CV-7023, Dkt. No. 1.)

both cases. (*See generally* Ulrich Am. Compl.; DeBellis Am. Compl.) On April 5, 2019, the Parties appeared for a Status Conference, where the Court adopted a briefing schedule for the instant Motion. (*See* Case No. 17-CV-4730 Dkt. (minute entry for Apr. 5, 2019), Dkt. No. 71; Case No. 17-CV-5547, Dkt. No. 64).) On April 23, 2019, counsel to Defendants Joint Council 16 ("Joint Council 16"), International Brotherhood of Teamsters ("IBT"), and Brad Raymond ("Raymond") submitted letters in both cases notifying the Court that Plaintiff's counsel had advised her that Plaintiffs no longer intended to pursue Counts I and II of the Amended Complaint and requested that those Counts be dismissed with prejudice. (Case No. 17-CV-4730, Dkt. No. 74; Case No. 17-CV-5547, Dkt. No. 67.) On June 7, 2019, the parties filed Stipulations of Voluntary Dismissal in both cases, which proposed to dismiss Counts I and II of the Amended Complaints with prejudice. (*See* Proposed Stipulation of Dismissal with Prejudice ("Proposed Stipulation of Dismissal") (Case No. 17-CV-4730, Dkt. No. 83; Case No. 17-CV-5547, Dkt. No. 76).) The Court signed the Stipulations of Dismissal on July 29, 2019. (*See* Signed Stipulation of Dismissal ("Stipulation of Dismissal") Case No. 17-CV-4730, Dkt. No. 89; Case No. 17-CV-5547, Dkt. No. 81.) The Stipulation of Dismissal terminated all originally named Defendants other than the current Defendants from the case. (*See id*.)

On May 14, 2019, Defendants filed the instant Motions and Memoranda in both cases, which pertain only to the remaining Counts and Defendants in the case, i.e., Plaintiffs' Eighth, Ninth, and Tenth Claims for Relief in the Amended Complaint and Defendants Local 812, Weber, Visconti, Vitta, Surdi, Alvarez, and Bowman collectively. (*See* Ulrich Not. of Mot.; Ulrich Consiglio Decl.; Ulrich Defs.' Mem.; DeBellis Not. of Mot.; DeBellis Consiglio Decl.; DeBellis Defs.' Mem.) Plaintiffs filed their Oppositions in both cases on June 26, 2019. (Ulrich's Opp'n to Mot. ("Ulrich's Mem.") (Case No. 17-CV-4730, Dkt. No. 85); DeBellis's

Opp'n to Mot. ("DeBellis's Mem.") (Case No. 17-CV-5547, Dkt. No. 77).) Defendants filed Replies in both cases on July 18, 2019. (Ulrich Reply Mem. in Supp. of Mot. ("Ulrich Defs.' Reply Mem.") (Case No. 17-CV-4730, Dkt. No. 88); DeBellis Reply Mem. in Supp. of Mot. ("DeBellis Defs.' Reply Mem.") (Case No. 17-CV-5547, Dkt. No. 80).)[4]

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her]

---

[4] The Court notes that both cases were inadvertently closed on ECF after the Stipulations of Dismissal were filed. (*See* Case No. 17-CV-4730, Dkt. (entry for July 29, 2019); Case No. 17-CV-5547, Dkt. (entry for July 29, 2019).) In DeBellis's case, the error was caught, and the case was re-opened, per instructions from chambers. (Case No. 17-CV-5547, Dkt. (entry for Aug. 7, 2019).) Ulrich's case remains inadvertently closed, but should be reopened as a result of the resolution of this Motion, as discussed in the Conclusion, *infra*, of this Opinion & Order.

5

claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motions To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Further, generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted).

B. Analysis

   1. Defamation Claims

Defendants moved to dismiss the state law defamation claims alleged against Weber, Vitta, Visconti, and Surdi. (*See* Ulrich Defs.' Mem. 2; DeBellis Defs.' Mem. 2.) In their

6

Oppositions, Plaintiffs withdrew their defamation claims. (*See* Ulrich's Mem. 1; DeBellis's Mem. 1.)[5]

Accordingly, the Court dismisses Count X from both Amended Complaints with prejudice.

### 2. Retaliation Claims

Defendants move to dismiss Plaintiffs' claims for retaliation under Title VII, arguing as to both Plaintiffs that individual defendants cannot be held liable under Title VII. (Ulrich Defs.' Mem. 18; DeBellis Defs.' Mem. 14.) Furthermore, as to Ulrich, Defendants argue that he does not plausibly allege a causal connection between engaging in protected activity and adverse employment action and that he cannot demonstrate good faith in engaging with the alleged protected activity. (Ulrich Defs.' Mem. 16–24.) As to DeBellis, Defendants argue that he does not allege that he engaged in protected activity and that he has not sufficiently alleged a claim of associational retaliation. (DeBellis Defs.' Mem. 13–17.)

#### a. Applicable Law

Title VII's anti-retaliation provision prohibits an employer from "discriminat[ing] against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). In other words, "Title VII forbids an employer to retaliate against an employee for . . . complaining of employment discrimination prohibited by Title VII." *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006). To state a claim, a plaintiff must establish that: "[1] a plaintiff

---

[5] Although DeBellis's Memorandum states only that he withdrew "defamation claims against the individual Defendants Weber, Vitta, and James Surdi," (DeBellis's Mem. 1), DeBellis's counsel later sent a letter clarifying that the withdrawal also applied to individual Defendant Visconti, (*see* Case No. 17-CV-5547, Dkt. No. 82; *see also* DeBellis Am. Compl. 30). Ulrich did not assert a defamation claim against Visconti. (*See* Ulrich Am. Compl. 39.)

7

was engaged in protected activity; [2] the alleged retaliator knew that [the] plaintiff was involved in protected activity; [3] an adverse decision or course of action was taken against [the] plaintiff; and [4] a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002) (citation and quotation marks omitted), *aff'd n part, rev'd in part*, 287 F.3d 138 (2d Cir. 2002); *accord McGuire-Welch v. House of the Good Shepherd*, 720 F. App'x 58, 62 (2d Cir. 2018). "A plaintiff's burden at this prima facie stage is de minimis." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation and italics omitted). Retaliation claims under § 1983 and the NYSHRL are subject to the same standard. *See Goonewardena v. N.Y. Workers Comp. Bd.*, 258 F. Supp. 3d 326, 343–44 (S.D.N.Y. 2017) (treating retaliation claims under Title VII, § 1983, and the NYSHRL under the same standard), *aff'd*, No. 17-CV-2234, 2019 WL 5092442 (2d. Cir. Oct. 11, 2019). The Court therefore evaluates the substance of each of Plaintiffs' retaliation claims—whether under Title VII or the NYSHRL—congruently.

To begin, Defendants are correct that individual defendants cannot be held liable under Title VII. *See Davis Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 687 (S.D.N.Y. 2012) ("It is well settled that there is no individual liability under Title VII." (citing *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012))); *see also Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) (noting that "individuals are not subject to liability under Title VII," including "individual defendants with supervisory control over a plaintiff" (citations and quotation marks omitted)). Accordingly, to the extent Plaintiffs intended to allege retaliation claims against

individual Defendants under Title VII in their Amended Complaints, they are dismissed with prejudice.[6]

### b. Ulrich

Defendants argue that Ulrich's claim fails because it does not plausibly allege a causal connection between the alleged protected activity and the alleged adverse employment action. (Ulrich Defs.' Mem. 19.) The Court disagrees.

In relevant part, Ulrich alleges that, in November 2015, he learned that Weber, Vitta, and Surdi had negotiated a "collective bargaining agreement" in violation of a different, "then-existing contract." (Ulrich Am. Compl. ¶¶ 46–47.) This agreement, according to Ulrich, allegedly violated the IBT Constitution and Local 812 By-laws. (*Id.* at ¶ 46.) Ulrich alleges that on "December 2nd," Ulrich brought this issue to Weber's attention. (*Id.* ¶ 48.)[7] Ulrich also separately alleges that he witnessed Vitta engage in sexual harassment of "two [] female subordinate employees on several occasions beginning in September 2014." (*Id.* ¶ 53.) Ulrich alleges he raised this issue with Weber in September and October of 2014 and May and December of 2015. (*Id.*) Ulrich further alleges that on December 2, 2015, he met with Weber to "discuss[] his complaints and intentions of reporting the improprieties and misdeeds" that he had allegedly witnessed. (*Id.* ¶ 54.) Ulrich alleges that on January 11, 2016, he learned that an investigation had been commenced against him for "undefined 'misconduct'." (*Id.* ¶ 60.) He

---

[6] Notably, this does *not* include counts of aiding and abetting with retaliatory conduct in violation of the NYSHRL, i.e., Count IX in both Amended Complaints. (*See* Ulrich Am. Compl. ¶¶ 154–57; DeBellis Am. Compl. ¶¶ 116–19.) The fate of the aiding and abetting claims, which only implicate Vitta and Weber (and not Visconti, Bowman, or Alvarez), is discussed below.

[7] Ulrich does not allege a particular year in this paragraph of the Amended Complaint but later mentions a meeting with Weber that occurred on December 2, 2015 where Ulrich allegedly raised both the bargaining agreement issue and a sexual harassment issue. (*See id.* ¶ 54.)

9

was then allegedly "summarily" suspended from his position at the Union in February 2016. (*Id.* ¶¶ 24, 88–89.) Ulrich also alleges, without specifying any time frame, that Weber and Vitta underwent surgical procedures that should not have been covered by the Local 812 Health Fund, that some of Weber's medical bills were "assumed by the Local 812 Health Fund," and that Vitta had "demanded other medical procedures" be covered by the Local 812 Health Fund. (*Id.* ¶¶ 49–50.) Ulrich allegedly "complained to Weber of these improper activities" as well. (*Id.* ¶ 51.)

"[T]o establish the last element of a prima facie case of retaliation, [Plaintiffs] must show that the allegedly adverse actions occurred in circumstances from which a reasonable jury could infer retaliatory intent. [The Second Circuit has] held that a close temporal relationship between a plaintiff's participation in protected activity and [a defendant's] adverse actions can be sufficient to establish causation." *Treglia*, 313 F.3d at 720 (citation omitted); *see also Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) ("The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." (citation and quotation marks omitted)); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998) (holding that "less than two months" between protected activity and allegedly adverse action were sufficient to establish causation). A plaintiff's "presentation of a temporal connection" can be "enough, in and of itself . . . to permit a reasonable jury to find causation." *Summa v. Hofstra Univ.*, 708 F.3d 115, 127 (2d Cir. 2013). Although the Second Circuit has not established a "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action," a court must "exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases," *id.* at 128 (citation and quotation marks omitted),

10

and a lengthy gap between the alleged protected activity and alleged adverse employment action can "suggest[], by itself, no causality at all," *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001).

Ulrich's complaints about Vitta's alleged sexual harassment began, according to the Amended Complaint, as early as September 2014. (Ulrich Am. Compl. ¶¶ 48, 53.) However, the latest possible moment in which Ulrich engaged in protected activity by complaining of the allegedly inappropriate activity was on December 2, 2015 at his meeting with Weber, just over two months before Ulrich was ultimately suspended on February 10, 2016. (*Id.* ¶¶ 24, 48, 54.) Given that the Court is bound to make all inferences in favor of Ulrich, the Court finds that these allegations sufficiently allege a causal connection.

Courts in this District and other district courts in the Second Circuit have allowed retaliation claims with longer gaps of time between protected activity and adverse employment action to survive the motion to dismiss stage. *See, e.g.*, *Wallace v. Esper*, No. 18-CV-6525, 2019 WL 4805813, at *9 (S.D.N.Y. Sept. 30, 2019) (denying the defendant's motion to dismiss as to a retaliation claim pertaining to acts of retaliation that occurred two and three months after the plaintiff engaged in protected activity); *Murray v. Dutchess Cty. Exec. Branch*, No. 17-CV-9121, 2019 WL 4688602, at *13 (S.D.N.Y. Sept. 25, 2019) (holding that the plaintiff's allegation of a two-to-three-month gap between "engaging in protected activity" and employment termination was "sufficiently narrow, at the motion-to-dismiss stage, to satisfy the requisite causal connection" (collecting cases)); *Alvarado v. Mount Pleasant Cottage Sch. Dist.*, No. 18-CV-0494, 2019 WL 4039149, at *13 (S.D.N.Y. Aug. 27, 2019) (finding that a gap of eight months between the alleged protected activity and alleged retaliatory conduct may be sufficient to allow an inference of causation); *Dawson v. City of New York*, No. 09-CV-5348, 2013 WL 4504620, at

11

*18 (S.D.N.Y. Aug. 19, 2013) (noting that "[w]hile the Second Circuit has not established a 'bright line rule' with respect to the limits of temporal proximity, three months falls within the time period sufficient to permit an inference of retaliation"); *Reuland v. Hynes*, No. 01-CV-5661, 2004 WL 1354467, at *11 (E.D.N.Y. June 17, 2004) (finding that a four-and-a-half month gap between the protected activity and adverse employment action does not preclude a causal connection). Accordingly, the Amended Complaint sufficiently alleges a causal connection based on temporal proximity.

Defendants also argue that an inference of causality resting on temporal proximity may be defeated where "an intervening causal event . . . occurred between the protected activity and the allegedly retaliatory discharge." *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) (citation omitted). Defendants cite to the investigation into Ulrich's alleged acceptance of bribes as the intervening causal event. (Ulrich Defs.' Mem. 20.) However, this argument misses the mark because Ulrich's Amended Complaint, read as a whole, appears to allege that the investigation *itself* constituted at least part of the retaliatory adverse employment action. Indeed, in circumstances where a plaintiff alleges that he or she suffered actual "employment consequences" due to an investigation—as Ulrich did here, since he alleges that he was suspended as a result of the allegedly procedurally flawed investigation—"an adverse employment action may be found" from the investigation itself. *Anemone v. Metro. Transp. Auth.*, 410 F. Supp. 2d 255, 266–68 (S.D.N.Y. 2006) (finding that, "[a]lthough dismissal may be warranted at a later stage of the proceedings," the plaintiff had sufficiently alleged a retaliation claim where the plaintiff claimed to be the subject of a "retaliatory investigation" leading to suspension and termination that began "less than a month" after the plaintiff engaged in the alleged protected activity) (collecting cases)); *see also Cox v. Onondaga Cty. Sheriff's Dep't*,

760 F.3d 139, 147 (2d Cir. 2014) (noting that "an employer's investigation may constitute a cognizable retaliatory action if carried out so as to result in . . . constructive discharge . . . , or if conducted in such an egregious manner as to 'dissuade a reasonable worker from making or supporting a charge of discrimination.'" (quoting *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006))), *aff'd*, 760 F.3d 139 (2d Cir. 2014). Here, Ulrich alleges that Weber and Vitta were notified of the rumors of Ulrich's acceptance of bribes as early as November 2015, (Ulrich Am. Compl. ¶ 57), and that it was not until January 11, 2016—just a month after Ulrich's purported December 2, 2015 meeting with Weber, (*id*. ¶ 54)—when Ulrich "learned an investigation had been commenced against him for undefined 'misconduct'," (*id*. ¶ 60).[8] Drawing all inferences in favor of Ulrich, as the Court is bound to do at this stage, the Court finds that Ulrich has plausibly alleged a retaliation claim under both Title VII and NYSHRL and that Count VIII of Ulrich's Amended Complaint survives.[9]

Ulrich also brings claims that Weber and Vitta "aided and abetted" retaliation against him, in violation of N.Y. Exec. Law § 296. (Ulrich Am. Compl. ¶¶ 154–57.) Although

---

[8] Notably, if the beginning of the investigation is considered the starting point for the alleged retaliatory adverse employment action, then it also strengthens the inference of temporal proximity, discussed above, because it cuts the gap between the last instance of protected activity and the first instance of alleged retaliation down to just over a month.

[9] Defendants also argue that Ulrich failed to demonstrate "good faith" because he filed formal, written complaints regarding Vitta's alleged sexual assault only after he had already learned he was being investigated by Local 812. (Ulrich Defs.' Mem. 21.) However, it is well established that "informal" complaints to management "on behalf of other employees and complaints of discriminatory practices generally," such as Ulrich's alleged verbal complaints in 2014 and 2015, constitute protected activity under Title VII. *Littlejohn v. City of New York*, 795 F. 3d 297, 317 (2d Cir. 2015) (citation omitted); *see also Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 651–52 (S.D.N.Y. 2015) (holding that informal complaints about sexual harassment constituted protected activity). Ulrich alleges that, as early as September 2014, he told Weber that he had witnessed Vitta engage in sexual harassment, thereby plausibly alleging that he engaged in protected activity prior to the beginning of an investigation against Ulrich in 2016 but that no proper action was taken as a result of his initial complaints. (*See* Ulrich Am.

generally, "claims brought under [NYSHRL] are analytically identical to claims brought under Title VII," "[o]ne notable exception to this rule is that, while an individual defendant . . . may not be held personally liable under Title VII, an individual defendant may be held liable under the aiding and abetting provision of the NYSHRL if he actually participates in the conduct giving rise to a discrimination claim." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106 n.10 (2d Cir. 2011) (citations and quotation marks omitted), *cert. denied*, 556 U.S. 1260 (2012).

To begin, Defendants' principal argument—that derivative aiding and abetting liability should be dismissed because the underlying retaliation claim should be dismissed—now fails because the Court finds that Ulrich's Amended Complaint sufficiently alleges a retaliation claim. (*See* Ulrich Defs.' Mem. 24.)

Defendants also argue that Ulrich fails to properly allege the particulars of who aided and abetted in the retaliation against Ulrich and how they did so. (*Id*. at 24–25.) The Court disagrees. The Second Circuit has stated that "a co-worker who actually participates in the conduct giving rise to a [retaliation] claim [may] be held liable under the NYSHRL even though that co-worker lack[s] the authority to either hire or fire the plaintiff." *Feingold v. New York*, 366 F.3d 138, 157–58 (2d Cir. 2004) (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995)). The Amended Complaint as a whole does plausibly allege that Vitta and Weber engaged in conduct that could constitute aiding and abetting retaliation against Ulrich. For example, Ulrich alleges, inter alia, that Vitta confronted Ulrich about Ulrich's intentions to raise the allegations of sexual harassment two days after Ulrich allegedly met with Weber, (Ulrich Am.

---

Compl. ¶ 53.) The veracity of these allegations and Ulrich's credibility in general are not up for evaluation in a motion to dismiss, where the Court must draw all inferences in favor of Ulrich. Accordingly, Defendants' arguments on this point do not persuade the Court to dismiss at this stage.

14

Compl. ¶ 55); that Weber and Vitta met with Ulrich's accusers to discuss allegations of bribery against Ulrich and that, subsequently, on December 10, 2015, Roland Acevedo ("Acevedo") was "retained by Local 812 in writing to investigate the bribery allegations [against Ulrich]," even though "neither Weber nor Vitta [allegedly] had authority" to retain him and "Board approval was [allegedly] not sought," (*id*. ¶¶ 58–59); and that Weber and Vitta were "engaging in private meetings with [] Local 812 Board Members" without Ulrich and DeBellis shortly before the Board "finally authorized Acevedo to investigate" the charges of bribery, (*id*. ¶¶ 63–68). Construing all inferences in favor of Ulrich, the Amended Complaint essentially alleges that Weber and Vitta orchestrated the entirety of the retaliatory investigation against Ulrich when it became apparent to them, after Ulrich's December 2, 2015 meeting with Weber, that Ulrich intended to pursue his complaints of sexual harassment. At this point in the case, this is enough to plausibly allege aiding and abetting of retaliation in violation of the NYSHRL. *See Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006) (finding it "too early to dismiss" claims of aiding and abetting liability against the individual defendant where the plaintiff alleged that the individual defendant worked in concert with others to create the retaliatory conduct in question); *see also Robles v. Goddard Riverside Cmty. Ctr.*, No. 08-CV-4856, 2009 WL 1704627, at *3 (S.D.N.Y. June 17, 2009) (contrasting dismissed aiding and abetting claim, where the plaintiff failed to proffer *any* "facts demonstrating any participation . . . in [the plaintiff's] discharge" with the aiding and abetting claim that remained, where the plaintiff accused an individual defendant of participating in the scheme to fire him); *cf. Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 437 (E.D.N.Y. 2012) (dismissing aiding and abetting claim at summary judgment as to one of the defendants because the evidence showed that the

15

defendant "did not participate in any of the alleged retaliatory actions").[10]  Therefore, Count IX of Ulrich's Amended Complaint also survives.

### c.  DeBellis

Defendants argue that DeBellis's Amended Complaint fails to plausibly allege that DeBellis engaged in any protected activity as defined under Title VII or the NYSHRL and that being "associated" with Ulrich does not constitute a cognizable basis for a retaliation claim. (DeBellis Defs.' Mem. 13–15.)  The Court agrees.

DeBellis alleges no instance of his own protected activity.  In his Amended Complaint, he instead refers to Ulrich's letter, written on January 13, 2016, regarding Ulrich's knowledge of the alleged sexual harassment.  (DeBellis Am. Compl. ¶ 43.)  He also refers to Ulrich's alleged "complaints" regarding Weber, Surdi, and Vitta's alleged improper activities.  (*Id.* ¶ 24.) Although DeBellis states that, on January 14, 2016, he was questioned by Acevedo about Ulrich and "the sexual harassment complaint in which [DeBellis] was [allegedly] identified as a witness," DeBellis makes no allegations about witnessing any alleged sexual harassment, the content of what DeBellis said at those depositions, (*see id.* ¶ 44), or indeed any acts whatsoever that suggest that DeBellis "express[ed] opposition to employment practices unlawful under Title VII [or] making a charge in a Title VII proceeding," *Swift v. Countrywide Home Loans, Inc.*, 770 F. Supp. 2d 483, 489 (E.D.N.Y. 2011) (citations omitted).  Although protected activity "need not

---

[10] This Court recognizes, as have others, that aiding-and-abetting liability under *Tomka*, 66 F.3d 1295, creates "a strange and confusing circularity where the person who has directly perpetrated the unlawful discrimination only becomes liable through the employer whose liability in turn hinges on the conduct of the direct perpetrator."  *Conklin*, 859 F. Supp. 2d at 436 (citation, quotation marks, and alteration omitted).  "Nevertheless, the law in [the Second] Circuit seems clear that a defendant may be held liable for aiding and abetting allegedly unlawful discrimination by [the] employer even where [the defendant's] actions serve as the predicate for the employer's vicarious liability."  *Id.*

rise to the level of a formal complaint in order to receive statutory protection," *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000), here, DeBellis fails to allege or describe any engagement whatsoever that could constitute his *own* protected activity, which is fatal to his retaliation claim.[11]

DeBellis also appears to vaguely allege that he was retaliated against because of his "association with Ulrich," who, as discussed above, allegedly raised complaints of sexual harassment against Vitta. (DeBellis Am. Compl. ¶ 50.) The Court agrees with Defendants that, under the current state of the law, this does not state a cognizable retaliation claim. "The Second Circuit has yet to rule on whether a claim of associational retaliation is cognizable." *Parker v. AECOM USA, Inc.*, No. 09-CV-1078, 2010 WL 625417, at *3 (D. Conn. Feb. 17, 2010) (citation omitted). "However, the Sixth Circuit has most recently followed the Fifth, Third, and Eighth Circuits in rejecting such claims." *Id*. (citation omitted). To the extent certain district courts in the Second Circuit have permitted associational retaliation claims, the circumstances usually involved a plaintiff's association with a protected class, not with an individual who is not alleged to be a member of a protected class. *See Kauffman v. Maxim Healthcare Servs.*, No. 04-CV-2869, 2006 WL 1983196, at *4 (E.D.N.Y. July 13, 2006) (permitting the plaintiff, a white male, "to assert claims of retaliation and discrimination [under Title VII and NYSHRL] on account of his claimed opposition to [the d]efendant's alleged policy against the hiring of non-whites and

---

[11] The law does protect employees who report discrimination in response to questions from employers, such as through obligatory participation in an investigation of allegations of a Title VII violation. *See Crawford v. Metro. Gov't of Nashville and Davidson Cty., Tenn.*, 555 U.S. 271, 279–80 (2009). However, here, DeBellis does not provide any allegations as to the content of *what* he said, if anything, in response to Acevedo's questions about Vitta's alleged acts of sexual harassment. (*See* DeBellis Am. Compl. ¶¶ 44, 51.) Although the Court is bound to draw inferences in favor of Plaintiffs at this stage, it cannot divine a critical allegation into existence. DeBellis's Amended Complaint, therefore, fails to allege a claim similar to the one in *Crawford* as well.

women"). Similarly, some courts have noted that a plaintiff may be permitted to "proceed with a retaliation claim on the basis that the plaintiff was retaliated against for a charge of discrimination filed by her sister [or other close relative]." *Gonzales v. N.Y. State Dep't of Corr. Servs. Fishkill Corr. Facility*, 122 F. Supp. 2d 335, 346–47 (N.D.N.Y. 2000) (citation omitted) (holding that the plaintiff had "standing to assert a Title VII retaliation claim" where she alleged to have suffered adverse employment action because her husband, a coworker, alleged "complaints of discrimination"); *see also Zuk v. Onondaga County*, No. 07-CV-0732, 2010 WL 3909524, at *18 (N.D.N.Y. Sept. 30, 2010) (holding that "no rational juror could find" that the plaintiff engaged in protected activity because, inter alia, the plaintiff "was not married to [the complainant] at the time that she complained of gender discrimination" and noting, generally, that there is "well-reasoned authority" to support the idea that third-party retaliation claims are not cognizable at all); *Genao v. N.Y.C. Dep't of Parks and Recreation*, No. 04-CV-2893, 2005 WL 1220899, at *5–6 (E.D.N.Y. May 23, 2005) ("Although the Second Circuit has not addressed the question of third-party retaliation claims under Title VII, several other courts of appeals have held that retaliation against a person who has not himself engaged in protected conduct is not actionable." (citation omitted)) (collecting cases in this Circuit with conflicting holdings).

Nevertheless, even if third-party retaliation claims were legally cognizable, DeBellis has not made any allegations that he was associated with a protected class, nor has he plausibly alleged anything about the depth or breadth of his "association" with Ulrich. For example, no allegations exist to suggest that his association with Ulrich is that of a close family member or

18

analogous to such a relationship.  Accordingly, assuming arguendo that such a claim is legally cognizable, DeBellis has failed to plausibly allege a third-party associational retaliation claim.

Further, because DeBellis's Amended Complaint fails to state a retaliation claim against Local 812 at all, his aiding and abetting claims against Weber and Vitta must also be dismissed. *See Kellman v. Metro. Transp. Auth.*, 8 F. Supp. 3d 351, 393 (S.D.N.Y. 2014) ("[A]iding and abetting is only a viable theory where an underlying violation has taken place." (citation, alteration, and quotation marks omitted)).

Therefore, the Court concludes that DeBellis fails to state a claim in both Counts VIII and IX.  Given that DeBellis is counseled, has already had an opportunity to amend his Complaint, and did not seek to amend these counts in their earlier-submitted Proposed Second Amended Complaints, (*see* Op. 81), the Court dismisses these claims with prejudice.  *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (citation, alteration, and quotation marks omitted)).

### III.  Conclusion

For the foregoing reasons, the Court partly denies Defendants' Motion as to Ulrich but grants Defendants' Motion as to DeBellis.

As to Ulrich, Counts VIII and IX remain in the case.  As noted above, this case appears to have been inadvertently closed following the filing of the Stipulation of Dismissal.  (*See* Case No. 17-CV-4730, Dkt. (entry for July 29, 2019).)  The Clerk of Court is respectfully directed to re-open Case No. 17-CV-4730 and note that the pending Motion To Dismiss is terminated.  (*See*

Ulrich Not. of Mot. (Case No. 17-CV-4730, Dkt. No. 78).) Individual Defendants Visconti and Alvarez, who are not implicated in the surviving aiding and abetting claim, should be terminated from Case No. 17-CV-4730.

As to DeBellis, granting this Motion terminates the case entirely. The Clerk of Court is respectfully directed to note that the pending Motion To Dismiss has been resolved and close Case No. 17-CV-5547. (*See* DeBellis Not. of Mot. (Case No. 17-CV-5547, Dkt. No. 71).)

The Court will hold a Status Conference regarding Case No. 17-CV-4730 (Ulrich's case) on January 10, 2020 at 10:30 a.m.

SO ORDERED.

DATED: December 1, 2019
          White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE